1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  | SIRENA REVELS,                          NO.  C2:14-CV-00322-TSZ-JLW

9  |                          Plaintiff,

10 |        v.

11 | CAROLYN W. COLVIN, Acting            REPORT AND
   | Commissioner of Social Security,     RECOMMENDATION

12 |                          Defendant.

13                        BASIC DATA

14 Type of benefits sought:

15        ( ) Disability Insurance

          (X) Supplemental Security Income

16 Plaintiff's:

17        Sex: Female

18        Age: 42 at amended onset date

19 Principal Disabilities Alleged by Plaintiff: degenerative joint disease of left knee; degenerative
   disc disease, status post laminectomy and microdiscectomy with postlaminectomy syndrome of
20 lumbar region; hammer toe and drop foot of left lower extremity with atrophy of calf; major
   depressive disorder; PTSD.

21 Disability Allegedly Began: May 16, 2011

22 Principal Previous Work Experience: construction worker, packager machine

23 Plaintiff Last Worked: last posted earnings in 1998

   Education Level Achieved by Plaintiff: high school
24

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY – ADMINISTRATIVE

Before ALJ Scott R. Morris:

Date of Hearing: October 31, 2012, hearing transcript AR 43-84

Date of Decision: February 11, 2013

Appears in Record at:  AR 25-37

Summary of Decision:

Claimant has not engaged in substantial gainful activity since her alleged onset date.  She has severe impairments of degenerative joint disease of left knee; degenerative disc disease, status post laminectomy and microdiscectomy with postlaminectomy syndrome of lumbar region; hammer toe and drop foot of left lower extremity with atrophy of calf; major depressive disorder; and PTSD. Her impairments, even in combination, do not qualify under the Listings.

She has the RFC to perform light work but is limited to standing and/or walking four hours in an eight hour workday, performing simple, routine tasks.  She can be around coworkers but should have only occasional interaction with coworkers and no tandem task work with coworkers and no more than superficial interaction with the public.

She cannot perform her past relevant work.  Testimony of a vocational expert indicates there are jobs she can perform including assembler production, sorter agricultural produce, and mail clerk.  This establishes she can perform substantial work which exists in the national economy and requires a finding of "not disabled."

Before Appeals Council:

Date of Decision: December 31, 2013

Appears in Record at: AR 1-7

Summary of Decision: declined review

## PROCEDURAL HISTORY – THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff  (X) Commissioner

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

(X)  Reverse and remand to the ALJ for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

1

SUMMARY OF RECOMMENDATION

2       There is merit to some of Plaintiff's assignments of error, particularly that the ALJ did

3  not provide legitimate reasons to dismiss the opinion of treating physician Dr. Sytman.  The

4  court should therefore remand the case for the ALJ to reassess Dr. Sytman's opinions.  The

5  ALJ should then make a new determination of RFC.  If that RFC differs from the one

6  previously determined, the ALJ should make a new "other work" determination at step five,

7  securing the testimony of a VE.

8

STANDARD OF REVIEW

9       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

10  Social Security benefits when the ALJ's findings are based on legal error or not supported by

11  substantial evidence in the record as a whole.

12

EVALUATING DISABILITY

13       The claimant, Ms. Revels bears the burden of proving she is disabled within the

14  meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

15  Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

16  any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

17  expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

18  423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

19  are of such severity that she is unable to do her previous work, and cannot, considering her age,

20  education, and work experience, engage in any other substantial gainful activity existing in the

21  national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

22  99 (9th Cir. 1999).

23       The Commissioner has established a five-step sequential evaluation process for

24  determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

ISSUES ON APPEAL

      1.      Did the ALJ err in assessing the opinions of treating physician, Dr. Sytman?

      2.      Did the ALJ err in assessing the opinion of PA Hussey?

      3.      Did the ALJ err in assessing the opinions of Drs. Kellogg and Peterson?

      4.      Did the ALJ err in assessing Plaintiff's credibility?

      5.      Did the ALJ err in assessing lay witness evidence?

Dkt. No. 14.

DISCUSSION

***Treating Physician, Dr. Sytman***

      Dr. Sytman was Plaintiff's treating physician and primary care provider.  Dr. Sytman provided physical RFC assessments in March 2011 (AR 371-79) and September 2011(AR 609-11).  Dr. Sytman diagnosed degenerative disc disease, chronic back pain, sciatica, and atrophy of left calf.  In March 2011 he opined Plaintiff would be limited to sedentary work (AR 378) and in September 2011 he opined she would be limited to light work but limited to working a maximum of ten hours a week. AR 609-10.

      As a treating physician, Dr. Sytman's opinion is generally entitled to controlling weight.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record.  *Id.* at 830-31; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  Dr. Sytman's opinion is

contradicted by the opinion of nonexamining, reviewing medical consultant Dr. Hale who found Plaintiff capable of full-time light work. AR 34. Therefore, the ALJ must provide specific and legitimate reasons for rejecting Dr. Sytman's opinion.

The ALJ gave Dr. Sytman's opinion "little weight," reasoning: "it is not consistent with the treatment notes accompanying the assessment, which revealed only mild findings on imaging" referring to (Ex.9F/7) [AR 380]. AR 34. The ALJ mistakenly read the record as including reports from separate examinations by Dr. Sytman in January and in March of 2011. In fact, there is no report of an examination in January; these records from Dr. Sytman all refer to his examination and report in March of 2011. In any event, the ALJ rejects Dr. Sytman's conclusions from "both" examinations for essentially the same reasons: "the physical examinations and diagnostic imaging." AR 34.

The major problem with this reasoning is that the treatment notes the ALJ cites as being inconsistent are not from Dr. Sytman. The treatment notes are a June 2011 report from physical therapist, Megan Kranenburg, on a referral from Dr. Han. *See* AR 380-82. Elsewhere in the decision the ALJ also refers to Ms. Kranenburg's report as being from Dr. Sytman, pointing to it as evidence of a lack of symptom severity. *See* AR 30 ("Dr. Sytman, the claimant's primary care provider, examined the claimant in June 2011 for knee pain. (Ex. 9F/7) [AR 380]").

Neither Plaintiff's nor Defendant's briefs caught this error. The supposed inconsistency with this record is not a legitimate reason to discount Dr. Sytman's opinion; it is a treatment report from Plaintiff's physical therapist, and is not from a physician. Defendant's argument in support of the ALJ's reasoning is likewise based on an incorrect description of the report. Defendant argues "The ALJ explained that he gave Dr. Sytman's January 2011 check-box assessment 'little weight because it is not consistent with the treatment notes

1    accompanying the assessment, which revealed only mild findings on imaging.' Tr. 34 (citing

2    Tr. 380)..."  Defendant's citation to Dr. Sytman's purported treatment records are not from Dr.

3    Sytman.  Thus, the records cannot be cited as a contradiction between the doctor's notes and

4    his opinions under *Bayliss*, as Defendant argues.  *See* Dkt. 18, page 10, lines 5-14.

5         Additionally, the ALJ does not specifically address Dr. Sytman's September 2011

6    opinion wherein he finds Plaintiff capable of light work but appears to limit her to a maximum

7    of ten hours per week.  AR 609.

8         Also regarding Dr. Sytman, the ALJ inaccurately notes "Dr. Sytman continued to

9    prescribe narcotic pain medication for the claimant's chronic pain despite his treatment notes

10   showing that she had not tried to find a pain specialist, she continued to smoke, and she

11   requested an early refill of medications. (Ex. 17F/11; 21F/13, 20.) [AR 604, 651, 659]."  AR

12   31.  However, the record reflects that on these three occasions Dr. Sytman reported he

13   "commended" Plaintiff in her decision and success in abstinence from smoking.  *See* AR 604,

14   651, 659.  Dr. Sytman noted Plaintiff requested the early refill of medication so she could save

15   gas money.  *See* AR 651.

16        The ALJ's reasoning does not constitute substantial evidence to overcome the

17   deference to which the opinion of a treating physician is entitled.  *Orn v. Astrue*, 495 F.3d 625,

18   631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a

19   treating physician over non-treating physicians. *See* 20 C.F.R. § 404.1527. If a treating

20   physician's opinion is "well-supported by medically acceptable clinical and laboratory

21   diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

22   record, [it will be given] controlling weight." *Id*. § 404.1527(d)(2).").

23   ///

24

1       ***Remand for full and accurate analysis of Dr. Sytman's opinions is necessary.***

2               The ALJ did not provide a legitimate reason to dismiss the opinion of treating physician

3       Dr. Sytman.  In some instances the court would be required to credit Dr. Sytman's opinion as

4       true.  *See Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) (establishing a three-part credit-as-

5       true standard: (1) the record has been fully developed and further administrative proceedings

6       would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

7       rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

8       discredited evidence were credited as true, the ALJ would be required to find the claimant

9       disabled on remand).

10              However, here, Dr. Sytman gave two somewhat different opinions regarding Plaintiff's

11      RFC and further proceedings are required to resolve the opinions.  In March 2011 Dr. Sytman

12      opined Plaintiff would be limited to sedentary work (AR 378) but in September 2011 he

13      opined she would be limited to light work and appears to have limited her to working a

14      maximum of ten hours a week.  AR 609.  The ALJ discounted Dr. Sytman's sedentary opinion

15      based on an erroneous reading Plaintiff's record and did not address Dr. Sytman's light work

16      opinion.   On remand, the ALJ should assess all of Dr. Sytman's opinions, including his RFC

17      assessments from March 2011 and September 2011, along with all other relevant evidence in

18      the record.  Then, the ALJ must make a new determination as to Plaintiff's RFC.  If that RFC

19      differs from the one previously determined, the ALJ must then make a new determination as to

20      "other work" at step five, securing the testimony of a vocational expert.

21              Plaintiff's other challenges to the ALJ's decision are without merit, for the reasons

22      discussed below.

23      ///

24      ///

REPORT AND RECOMMENDATION - 7

*Dr. Sun and PA-C Hussey*

Certified Physician Assistant Hussey worked under the supervision of Dr. Sun at a pain clinic where Plaintiff was treated by both PA-C Hussey and Dr. Sun beginning in March 2012. The ALJ gave "little to no weight" to PA-C Hussey's October 2012 RFC assessment, in which he found Plaintiff unable to perform even low stress, sedentary work. AR 35, 756-69. The ALJ reasoned the opinion is inconsistent with objective evidence in the record, including "mostly normal mental status examinations, largely normal to mild findings on physical examinations (including examinations performed by Mr. Hussey at Exhibit 29F [AR 799]), and minor findings on diagnostic imaging." AR 35. The record shows the examination performed by PA-C Hussey on October 2, 2012 reports consistently elevated blood pressure, antalgic gate with cane or walker, spine tenderness with some limited range of motion, pain with extension, decreased sensation on left lower extremity, and that Plaintiff was prescribed medication for anxiety and insomnia, and her pain medication was increased. She was scheduled for a "spinal fentanyl injection" which was performed by Dr. Sun approximately a week later. AR 798-99. Dr. Sun reviewed and cosigned PA-C Hussey's exam report which contains nearly identical findings from Dr. Sun's report the following week.

A physician assistant is not an acceptable medical source, but is viewed as an "other medical source" under the regulations. *See* SSR 06-03p. However, the record reflects PA Hussey was working under Dr. Sun, who reviewed and cosigned his examination report. AR 798. Although the subsequent RFC form was addressed to Dr. Sun it was completed and signed by PA-C Hussey. AR 764. Regardless of the applicable standard of review, the ALJ provides specific and legitimate reasons for giving very little weight to the RFC assessment. The relatively mild to moderate physical examination does not reflect the extreme limitations opined in Mr. Hussey's RFC, that Plaintiff is unable to perform even simple, sedentary work.

1    The ALJ also reasoned Mr. Hussey's opinion overstepped his qualifications because he

2    commented on psychological function; and because he related his opinion back to May 2008,

3    when he was not treating Plaintiff.  The record indicates Plaintiff did not begin treatment with

4    Dr. Sun/PA Hussy until March 2012.  Thus, the ALJ provides several specific, legitimate

5    reasons based on substantial evidence in the record for discounting PA Hussey's RFC opinion.

6         Plaintiff's Opening Brief includes a four-page list of other medical evidence, "most" of

7    which she asserts the ALJ failed to discuss or properly to evaluate, as supportive of the

8    opinions of Dr. Sytman or Mr. Hussey, and supportive of her symptom complaints.  Plaintiff

9    also assigns error to the ALJ's placing "great weight" on the opinion of nonexamining

10   physician, Dr. Hale, over the examining opinions of Sytman and Hussey, particularly because

11   Dr. Hale's opinion was given in August 2011 and therefore did not include review of later

12   evidence.  However, with the exceptions discussed above, the ALJ did review the later

13   evidence and corresponding opinions, even if Dr. Hale did not.

14

15   ***Mental Health Assessments by Shannon Kellogg, Psy.D., and Anita Peterson, Ph.D.***

16        In August 2011, Dr. Kellogg, the consutative mental health examiner, performed a

17   mental status examination and assessed Plaintiff's mental RFC.  Dr. Kellogg diagnosed mood

18   disorder NOS with anxious features and psychotic features.  Plaintiff asserts the ALJ erred in

19   purporting to give "great weight" to Dr. Kellogg's opinion,  without acknowledging Dr.

20   Kellogg's opinion that "[i]t is likely she will continue to have difficulties and periods of

21   decompensation, due to the chronic nature of her mood disorder with psychotic features."  AR

22   455.

23        The ALJ notes Dr. Kellogg's analysis of Plaintiff's possible tendency to decompensate

24   when under stress, among other work limitations.  AR 35.  Dr. Kellogg opined "[f]rom our

REPORT AND RECOMMENDATION - 9

1    interview and her work history, it appears she may become decompensated when under stress

2    or when tasks are being placed on her that she is unable to deal with, particularly when

3    discussing personal or emotional topics. The client's ability to do work related activities may

4    be impacted by her inability to problem solve and adapt to new situations, deficits in reality

5    testing, impaired frustration tolerance, possible difficulties in getting along with supervisors

6    and peers and repeated periods of decompensation."  AR 454.

7           The ALJ noted Dr. Kellogg's opined limitations and that despite these impairments Dr.

8    Kellogg also found Plaintiff can slowly perform most daily living activities, drive, and care for

9    her daughter, and that she has adequate cognitive functioning and judgment.  Accordingly, the

10   ALJ reasonably accounted for the work-related impairments by limiting Plaintiff's RFC to

11   simple routine tasks, occasional changes in work setting, occasional interaction with

12   coworkers, no tandem task work with coworkers, and only superficial interaction with the

13   public.  AR 29.  Moreover, Dr. Kellogg also noted Plaintiff's possible decompensations are

14   impacted by her noncompliance with treatment and that she was not taking medication: "The

15   client's prognosis is guarded. It is likely she will continue to have difficulties and periods of

16   decompensation, due to the chronic nature of her mood disorder with psychotic features. She is

17   noncompliant with treatment. She is not currently taking medications and appears resistant to

18   treatment and she reports it has not been beneficial in the past. This is a poor diagnostic

19   indicator as she may continue to be non compliant with treatment."  Dr. Kellogg recommended

20   she seek counseling and medication to help with her psychological symptoms.  AR 455.

21          Plaintiff also asserts the ALJ erred in rejecting Dr. Kellogg's determination of

22   Plaintiff's GAF score of 49.  The ALJ gave little weight to the GAF score of 49, reasoning it is

23   inconsistent with all of the abilities that were identified by Dr. Kellogg or Plaintiff's

24   performance on the mental status examination.  The ALJ's reasoning is specific, legitimate,

REPORT AND RECOMMENDATION - 10

and based on substantial evidence.  As the ALJ notes, the MSE (mental status examination) showed some difficulties in concentration but intact memory, adequate judgment, cognitive functioning, and skills to manage her own funds.  AR 35, 455.  Plaintiff takes a different view of the ALJ's interpretation of the evidence but does not demonstrate error here.  The ALJ's analysis of Dr. Kellogg's opinion is based on substantial evidence in the record and is not in error.

### Anita Peterson, Ph.D.

The ALJ gave great weight to Dr. Peterson's opinion that Plaintiff can perform simple, routine tasks with some limitations to her contact with the public and coworkers.  AR 34, 97. Plaintiff asserts error with the ALJ's assessment of the portion of Dr. Peterson's opinion that limits her ability to adapt to the stress associated with a competitive work environment. However, the ALJ assessed Dr. Peterson's limitations in this regard, noting Plaintiff's ability to adapt to low pressure work in which the routine changes infrequently.  AR 34.  This appropriately reflects Dr. Peterson's opinion: "[claimant's symptoms] limit her ability to adapt to the stress associated with a competitive work environment. She can adapt to low pressure work in which routine changes infrequently."  AR 97.  Accordingly, the ALJ allowed for Plaintiff's RFC to include simple, routine tasks and occasional changes in work setting.  *See* AR 29.  Plaintiff fails to establish error in this regard.

### Plaintiff's Credibility Regarding Her Symptom Severity

The ALJ determined the symptom severity Plaintiff alleges is not supported by the evidence.  AR 33.  Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony about the severity of her symptoms.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  "General findings are insufficient;

rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

Here, there the ALJ cites some evidence of malingering, related to drug-seeking behavior. The ALJ notes a provider found Plaintiff to have positive Waddell signs (Ex. 28F/25), which can be supportive of malingering. AR 34. The ALJ also noted Plaintiff was found to have been prescribed narcotics from two providers at the same time, without their knowledge. AR 34. Dr. Sytman stopped prescribing Plaintiff narcotics when he found out Dr. Sun was also prescribing them. The ALJ also found significant that a when a provider pointed out that Plaintiff was not limping, she began doing so. AR 30, 397. The ALJ cites some evidence of malingering but also provides additional clear and convincing reasons for discounting Plaintiff's credibility.

The ALJ gives four main reasons for finding the severity of Plaintiff's symptom allegations not fully credible: (1) Plaintiff's activities of daily living demonstrate higher functioning than Plaintiff alleges she is capable of, such as self-care, some household chores, driving, grocery shopping, taking care of her young daughter, attending MHC classes twice a week, and doing some exercise. AR 33. (2) The ALJ notes some of Plaintiff's previous employment ended for reasons other than disability—that she reported she was usually let go because of her background. (3) The ALJ finds Plaintiff's work history is limited and sporadic, with limited earnings before her alleged onset of disability. AR 33-34. (4) The ALJ also finds

evidence of drug seeking behavior, as noted above, that Plaintiff was being prescribed narcotics by two doctors at the same time.  AR 34.  The ALJ notes Plaintiff's visits to the ER for very minor complaints, which he found also diminishes her pain complaints.  The ALJ also notes her doctor described her as very active, and that although Plaintiff alleges concentration and memory problems, testing shows she is adequate in these areas.  AR 33.  These cited reasons and their supporting examples are clear, convincing, and based on substantial evidence in Plaintiff's record.  Plaintiff takes a different reading of particular evidence but does not demonstrate error in the ALJ's conclusion that her symptoms are less severe than she alleges.

### Lay Witness Evidence

Plaintiff asserts the ALJ erred in discounting the lay witness report from an SSA interviewer.  To discount lay witness testimony, the ALJ must give reasons germane to each witness.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

The ALJ noted "I also considered the observations of J. Coulter, the state agency employee who completed the disability report at the field office. Ex. 3E. I find this person's observations of the claimant's condition during the interview to be of little value."  AR 34, note 1, citing AR 221.  The lay witness report notes that during the SSA interview Plaintiff did not know her address and went to her car to find it; she then left her purse in her car and had to go back to get it.  He also notes Plaintiff seemed almost to fall asleep in the interview.  The interviewer noted she had some trouble concentrating and answering questions.  AR 221.  If there is any error here, it is harmless.  Plaintiff does not allege how these observations should

have changed her RFC or limitations.  *See* Dkt. 14 at 21.  The ALJ discussed that psychologists Drs. Kellogg and Peterson noted her difficulty concentrating.  Plaintiff's RFC allows for simple, routine tasks and only occasional changes in work setting.  AR 29.

CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative proceedings.

A proposed order accompanies this Report and Recommendation.  Objections to this Report and Recommendation, if any, must be filed with the Clerk and served upon all parties to this suit no later than fourteen (14) days after the date on which this Report and Recommendation is signed.  If no timely objections are filed, the Clerk shall note this matter for the earliest Friday after the deadline for objections, as ready for the Court's consideration.  Failure to file objections within the specified time may affect the parties' right to appeal.  If objections are filed, any response is due within fourteen (14) days after being served with the objections.  A party filing an objection must note the matter for the court's consideration fourteen (14) days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.

DATED this 11th day of December, 2014.

JOHN L. WEINBERG
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14